UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

EUGENE DIVISION

BART A.,[1]

        Plaintiff,

    v.

COMMISSIONER OF THE SOCIAL
SECURITY ADMINISTRATION,

        Defendant.

Case. No. 6:18-cv-02205-YY

OPINION AND ORDER

YOU, Magistrate Judge:

Plaintiff Bart A. seeks judicial review of the final decision by the Social Security

Commissioner ("Commissioner") denying his application for Disability Insurance Benefits

("DIB") under Title II of the Social Security Act ("SSA"), 42 U.S.C. §§ 401–33. This court

has jurisdiction to review the Commissioner's decision pursuant to 42 U.S.C. § 405(g) and

§ 1383(c)(3). For the reasons set forth below, the Commissioner's decision is REVERSED

and REMANDED for further proceedings.

---

[1] In the interest of privacy, the court uses only plaintiff's first name and the first initial of
his last name.

1 – OPINION AND ORDER

## PROCEDURAL HISTORY

Plaintiff protectively filed a Title II application for disability insurance benefits on March 9, 2015, alleging a disability onset date of November 26, 2013. Tr. 13, 175–76. His date last insured is December 31, 2019.[2] Tr. 15. The Commissioner denied plaintiff's claim on June 10, 2015, and again upon reconsideration on October 5, 2015. Tr. 97, 112. Plaintiff filed a written request for a hearing on October 20, 2015, and a hearing was held before Administrative Law Judge ("ALJ") Ted Neiswanger on June 22, 2017. Tr. 29–87, 126–27. After receiving testimony from plaintiff and a vocational expert ("VE"), Nancy Bloom, the ALJ issued a decision, finding plaintiff not disabled within the meaning of the Act. Tr. 10–27. The Appeals Council denied plaintiff's request for review on October 25, 2018. Tr. 1–6. Thus, the ALJ's decision is the Commissioner's final decision and subject to review by this court. 42 U.S.C. § 405(g); 20 C.F.R. § 422.210.

## STANDARD OF REVIEW

The reviewing court must affirm the Commissioner's decision if it is based on proper legal standards and the findings are supported by substantial evidence in the record. 42 U.S.C. § 405(g); *Lewis v. Astrue*, 498 F.3d 909, 911 (9th Cir. 2007). This court must weigh the evidence that supports and detracts from the ALJ's conclusion and "'may not affirm simply by isolating a specific quantum of supporting evidence.'" *Garrison v. Colvin*, 759 F.3d 995, 1009–10 (9th Cir. 2014) (quoting *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007)). This court may not substitute its judgment for that of the Commissioner when the evidence can reasonably support either affirming or reversing the decision. *Parra v.*

---

[2] The ALJ noted plaintiff's "earnings record shows that the claimant has acquired sufficient quarters of coverage to remain insured through December 31, 2019." Tr. 13.

*Astrue*, 481 F.3d 742, 746 (9th Cir. 2007).  Instead, where the evidence is susceptible to more than one rational interpretation, the Commissioner's decision must be upheld if it is "supported by inferences reasonably drawn from the record."  *Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008) (citation omitted); see also *Lingenfelter*, 504 F.3d at 1035.

## SEQUENTIAL ANALYSIS AND ALJ FINDINGS

Disability is the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A).  The ALJ engages in a five-step sequential inquiry to determine whether a claimant is disabled within the meaning of the Act.  20 C.F.R. § 404.1520; *Lounsburry v. Barnhart*, 468 F.3d 1111, 1114 (9th Cir. 2006) (discussing *Tackett v. Apfel*, 180 F.3d 1094, 1098–99 (9th Cir. 1999)).

At step one, the ALJ found that plaintiff had not engaged in substantial gainful activity since his alleged onset date of November 26, 2013.  Tr. 15.  At step two, the ALJ determined plaintiff suffered from the following severe impairments: lumbar degenerative disc and joint disease, cervical degenerative disc disease, thoracic degenerative disc disease with radiculopathy versus zoster sine herpetica, and obesity.  Tr. 15–17.

At step three, the ALJ found plaintiff did not have an impairment or combination of impairments that met or medically equaled a listed impairment.  Tr. 17.  The ALJ next assessed plaintiff's residual functional capacity ("RFC") and determined he could perform light work as defined in 20 C.F.C. § 404.1567(a), with the following limitations:

> He can lift and carry 10 pounds occasionally and less than 10 pounds
> frequently.  He can stand and walk two hours of an eight-hour workday,
> except walking must be on even ground and he may need to use a cane at
> times when walking.  He can sit six hours of an eight-hour workday.  He can

frequently balance, stoop, kneel, crouch, and crawl, and occasionally climb ramps and stairs. He can never climb ladders, ropes and scaffolds. The claimant is to avoid concentrated exposure to hazards.

*Id.*

At step four, the ALJ found plaintiff was unable to perform any past relevant work. Tr. 20.

At step five, the ALJ found that considering plaintiff's age, education, work experience, and RFC, he could perform jobs that existed in significant numbers in the national economy including wafer breaker, semiconductor; document preparer; and food and beverage order clerk. Tr. 21. Thus, the ALJ concluded plaintiff was not disabled at any time from November 26, 2013, through the date of the ALJ's decision on December 6, 2017. Tr. 22.

## DISCUSSION

Plaintiff argues that the ALJ (1) improperly discounted his subjective symptom testimony, and (2) erroneously assessed the medical opinions of Bruce Byram, MD, Laura Rung, MD, and Curtis Black, MD.

## I. Subjective Symptom Testimony

When a claimant has medically documented impairments that could reasonably be expected to produce some degree of the symptoms complained of, and the record contains no affirmative evidence of malingering, "the ALJ can reject the claimant's testimony about the severity of . . . symptoms only by offering specific, clear and convincing reasons for doing so." *Smolen v. Chater*, 80 F.3d 1273, 1281 (9th Cir. 1996) (citation omitted). A general assertion that the claimant is not credible is insufficient; the ALJ must "state which . . . testimony is not credible and what evidence suggests the complaints are not credible." *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993). The reasons proffered must

be "sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily discredit the claimant's testimony." *Orteza v. Shalala*, 50 F.3d 748, 750 (9th Cir. 1995) (internal citation omitted). If the "ALJ's credibility finding is supported by substantial evidence in the record, [the court] may not engage in second-guessing." *Thomas v. Barnhart*, 278 F.3d 947, 959 (9th Cir. 2002) (citation omitted).

Effective March 28, 2016, the Commissioner superseded Social Security Ruling ("SSR") 96-7p, governing the assessment of a claimant's "credibility," and replaced it with SSR 16-3p. *See* SSR 16-3p, *available at* 2016 WL 1119029. SSR 16-3p eliminates the reference to "credibility," clarifies that "subjective symptom evaluation is not an examination of an individual's character," and requires the ALJ to consider all of the evidence in an individual's record when evaluating the intensity and persistence of symptoms. *Id.* at *1–2. The ALJ must examine "the entire case record, including the objective medical evidence; an individual's statements about the intensity, persistence, and limiting effects of symptoms; statements and other information provided by medical sources and other persons; and any other relevant evidence in the individual's case record." *Id.* at *4.

Plaintiff alleges that the ALJ failed to identify specific, clear and convincing reasons supported by substantial evidence to reject his subjective symptom testimony. Pl. Br. 16–21, ECF #18. The Commissioner responds that the ALJ was not required to provide clear and convincing reasons because there is affirmative evidence of malingering. Def. Br. 2, ECF #20; *see Smolen*, 80 F.3d at 1281.

The ALJ made no specific finding of malingering, but did cite to plaintiff's January 14, 2014 medical examination by Dr. Elias Dickerman, who found plaintiff to have

"decreased pain threshold, overreaction, giveway, positive Waddell testing on compression, [and] positive right-sided Marxer test." Tr. 839. In Dr. Dickerman's opinion, "[t]his suggests a component of embellishment, probably for secondary gain." *Id*.

However, no other doctors shared this belief, and Dr. Dickerman's opinion was specifically refuted by Dr. Byram, plaintiff's long-term treating physician. *See* Tr. 467. In a letter dated April 14, 2014, Dr. Byram explained that plaintiff, who had been a patient for several years, suffered from chronic anxiety disorder. *Id*. Dr. Byram further explained that "[w]hile Dr. Dickerson imputes secondary gain to explain the variability in [plaintiff's] examination, it is my opinion that [plaintiff's] anxiety about his pain and prognosis accounts for this variability and apparent instances of symptom magnification." *Id*. At least one other case in this district has observed that a single opinion of malingering "may not rise to the level of affirmative evidence" depending on the other evidence in the record. *Davenport v. Colvin*, No. 6:12-CV-00451-CL, 2013 WL 4083580, at *3–4 (D. Or. Aug. 8, 2013) (finding no affirmative evidence of malingering where only one examining physician out of seventeen other medical opinions made an affirmative finding of malingering).

Nevertheless, the ALJ otherwise provided clear and convincing reasons to discredit plaintiff's subjective symptom testimony. The ALJ found that while plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptom," plaintiff's "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record." Tr. 18. The ALJ discredited plaintiff's subjective symptom testimony because: (1) it was inconsistent with the medical record, (2) his activities of daily living were consistent with performing sedentary work, and (3) his overall statements were inconsistent.

### A.    Inconsistency With Medical Records

The ALJ found plaintiff's testimony was inconsistent with multiple examinations that were "essentially normal." Tr. 18 (citing Tr. 777–94, 862–64). The ALJ noted "there is no established underlying etiology for the alleged right lower extremity weakness." Tr. 18. The ALJ also noted that plaintiff's "on the job" lumbar injury was "determined be a strain" and imaging showed "only mild progression of degenerative changes in comparison to pre-injury studies." *Id.* (citing Tr. 600, 766–76). Additionally, the ALJ found "inconsistencies concerning strength, sensation, and reflexes, including multiple instances of normal strength and no abnormalities on electrodiagnostic studies." Tr. 18 (citing 365–70, 396–400, 554–560, 790–94, 804–14, 876–77, 880–85, 897–98).

However, as discussed in detail below, the ALJ improperly failed to consider the opinions of Dr. Byram and Dr. Rung. Thus, his conclusion that plaintiff's testimony was inconsistent with medical records does not constitute a clear and convincing reason to discredit plaintiff's subjective symptom testimony.

### B.    Activities of Daily Living

An ALJ may invoke activities of daily living in the context of determining symptom allegation credibility to (1) illustrate a contradiction in previous testimony, or (2) demonstrate that the activities meet the threshold for transferable work skills. *Orn v. Astrue*, 495 F.3d 625, 639 (9th Cir. 2007).

Here, the ALJ found that plaintiff "engages in a variety of daily activities that would be consistent with at least sedentary exertion work." Tr. 18. Specifically, the ALJ noted that plaintiff cares for two minor children, cares for livestock with the help of his children, cooks simple meals, and washes dishes. Tr. 17. The ALJ also noted that in plaintiff's April

2015 function report, he reported that he could "stand 30 minutes at a time," and at the hearing, plaintiff testified that he was independent in self-care, could do laundry, sweeping, and mow the lawn, went shopping every two weeks, and could drive. Tr. 18. The ALJ further observed that plaintiff maintained a commercial driver's license "despite asserting he is disabled." Tr. 19. The ALJ noted that during his licensing physical examination with Dr. Black, plaintiff reported that "mild right lower extremity weakness did not bother him in a sitting position, that he could drive without any problems, and he did not take opiates during the day." *Id*.

Plaintiff argues that his activities do not undermine his testimony because he receives help from his wife when caring for his two minor children, and there is no evidence that he "actually performed any commercial driving activities during the relevant period." Pl. Br. 20, ECF #18. However, as the ALJ noted, when plaintiff saw Dr. Black for a medical examination to renew his commercial driver's license, he stated that his right leg did not bother him in a sitting position, he drove without any problems, he had no decreased sensation in his foot, and his reflexes were normal. Tr. 967. This is in direct contrast to plaintiff's claim that his "right leg goes dead as well as weak." Tr. 259.

Plaintiff also testified that he fed the goats and chickens by himself when his children were unavailable, and that he carried a one-and-a-half-pound bucket of feed to the pasture with one hand while using a walking stick in the other. Tr. 76. An ALJ may use activities of daily living to show that activities meet the threshold for transferable work skills, and reasonably did so in this case.[3] *See Orn*, 495 F.3d at 639.

---

[3] Based on plaintiff's report that he "cannot lift over 20 pounds," the ALJ limited the RFC to lifting and carrying "10 pounds occasionally and less than 10 pounds frequently." Tr. 17,

### C.    Inconsistent Statements

The ALJ also found inconsistent statements in plaintiff's testimony.  "In reaching a credibility determination, an ALJ may weigh inconsistencies between the claimant's testimony and his or her conduct, daily activities, and work record, among other factors."  *Bray v. Comm'r*, 554 F.3d 1219, 1227 (9th Cir. 2009).

First, the ALJ relied on plaintiff's prior physical therapy records from 2007, which showed back and right lower extremity pain and weakness, to conclude "that [plaintiff] was able to work for many years with the same issues he now claims are disabling."  Tr. 18. Next, the ALJ wrote that although plaintiff "alleged falling about once a month and using a walking stick all the time," he told medical providers that "he was able to feel a fall coming on and sit."  *Id*.  Finally, the ALJ found that plaintiff had no atrophy, could walk a mile on a treadmill, and "demonstrated above average exercise capacity on a treadmill stress test in 2016," which suggested he "maintain[s] a much more active lifestyle than his hearing testimony asserts."  Tr. 18–19.  The ALJ's findings are supported by the record.

In sum, the ALJ provided clear and convincing reasons to discredit plaintiff's subjective symptom testimony.  Although plaintiff argues for a different reading of the record, because the ALJ's findings are supported, they must be upheld.  *See Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2004) (holding that if evidence exists to support more than one rational interpretation, the court is bound to uphold the ALJ's findings).

## II.    Medical Opinion Evidence

Plaintiff argues that the ALJ gave improper weight to the medical opinions of Dr.

---

18.  The ALJ also limited plaintiff to walking "on even ground" and noted that plaintiff "may need to use a cane at times when walking."  *Id*.

Bruce Byram, Dr. Laura Rung, and Dr. Curtis Black.  Pl. Br. 5–15, ECF #18.

The ALJ is responsible for resolving ambiguities and conflicts in the medical testimony.  *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989).  The ALJ must provide clear and convincing reasons for rejecting the uncontradicted medical opinion of a treating or examining physician, or specific and legitimate reasons for rejecting contradicted opinions, so long as they are supported by substantial evidence.  *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005).  However, "[t]he ALJ need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory, and inadequately supported by clinical findings."  *Chaudhry v. Astrue*, 688 F.3d 661, 671 (9th Cir. 2012).  Additionally, the ALJ may discount physicians' opinions based on internal inconsistencies, inconsistencies between their opinions and other evidence in the record, or other factors the ALJ deems material to resolving ambiguities.  *Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 601–02 (9th Cir. 1999).

## A.    Dr. Bruce Byram and Dr. Laura Rung

The ALJ determined the opinions of Dr. Byram and Dr. Rung were not "entitled significant weight" because they were "statements and opinions relate[d] to a workers' compensation claim focused on an on the job injury, not the totality of the claimant's impairments," and did not otherwise address them.  Tr. 20.  Plaintiff argues the ALJ was required to evaluate the doctors' opinions because they contain statements regarding the "nature of severity" of his impairments, including his "symptoms, diagnosis, prognosis," and what he "can still do despite impairment(s), and [his] physical . . . restrictions."  Pl. Br. 9, ECF #18 (citing 20 C.F.R. § 404.1527(a)(1)).  Indeed, under 20 C.F.R. 404.1527(c), the ALJ was required to "evaluate every medical opinion" "regardless of its source."  Thus,

even though Dr. Byram's and Dr. Rung's opinions were provided in relation to plaintiff's

workers' compensation claim, the ALJ was required to review those opinions. This was

especially important in plaintiff's case because his worker's compensation claim for a back

injury related to the same impairments that he claims are disabling. *Compare* Tr. 88, 98

with Tr. 198.

The Commissioner argues that the ALJ's failure to discuss Dr. Byram's and Dr.

Rung's medical opinions is harmless because their opinions contained temporary work

restrictions that do not undermine the ALJ's decision. Def. Br. 3, ECF #20. Relying on

*Carmickle*, the Commissioner argues that "short-term assessments are of little use in

determining the claimant's functioning over [a] longer period of time." *Id*. (citing

*Carmickle*, 533 F.3d at 1165).

In *Carmickle,* the claimant's treating physician gave the claimant a two-week excuse

from work, but two months later released the claimant for full-time work. *See* 533 F.3d at

1165. The ALJ gave the treating physician's opinion "little weight" in assessing the

claimant's "long-term functioning," and the reviewing court found the ALJ's decision was

supported by substantial evidence. *Id*.

Plaintiff's case is distinguishable. Neither Dr. Byram nor Dr. Rung released plaintiff

for full-time work. On March 12, 2014, Dr. Byram released plaintiff to sedentary office

work for up to two hours a day. Tr. 493. And on May 8, 2014, Dr. Rung noted that plaintiff

had been released to "four hours per day at work maximum with 10 pounds lift." Tr. 454.

Later, on June 10, 2014, Dr. Byram released plaintiff for "20 hours a week" of work, with

"[n]o more than 4 hours a day." Tr. 447. He found plaintiff could lift "up to 20 pounds

with no repetitive bending or twisting or prolonged stooping or standing." *Id.* On August 5,

2014, Dr. Byram found plaintiff could work "half-time," that he should not "lift over 20 pounds," and was not to do "repetitive twisting bending or prolonged bending or stooping." Tr. 434.

An ALJ's error is harmless when it is "inconsequential to the ultimate nondisability determination." *Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1055–56 (9th Cir. 2006). Here, the ALJ's failure to discuss Dr. Byram's and Dr. Rung's medical opinions is not harmless. Both doctors limited plaintiff to part-time work and provided work restrictions that the ALJ was required to consider in determining plaintiff's RFC and his ability to perform jobs that exist in significant numbers in the national economy. Thus, the ALJ erred in failing to evaluate their medical opinions.

### B.    Dr. Curtis Black

Plaintiff argues the ALJ erred by failing to provide legally sufficient reasons for rejecting the medical opinion of treating physician Dr. Black. Pl. Br. 5–6, 10–15, ECF #18. The ALJ noted that in April 2017, Dr. Black provided "a statement that did not identify specific abilities or limitations but stated that the claimant had 'permanent leg weakness and at times severe gait abnormalities related' with repeated falls." Tr. 19 (citing Tr. 1045). Next, the ALJ described a medical form completed by Dr. Black in May 2017 in which Dr. Black identified "chronic back pain" and right "leg weakness." *Id.* The ALJ acknowledged Dr. Black's opinion that plaintiff would periodically need to lie down or rest during the day, could not "walk or stand for longer than [a] few minutes without resting," could "sit or stand/walk 10 minutes at a time, sit one hour total per day and stand/walk one hour total per day," would "need unscheduled work breaks hourly for 10 minutes," "could lift and carry 10 pounds occasionally," "would need to periodically elevate his legs," and was "expected to

have more than four days or absence monthly." *Id*.

The ALJ did not specifically explain what weight he gave to Dr. Black's medical opinion, but did acknowledge that "[t]reating sources are generally entitled to great weight." *Id*. The ALJ also noted that such opinions "must be well-supported by medically acceptable clinical and laboratory diagnostic techniques and not inconsistent with other substantial evidence." *Id*. However, the ALJ found that "[h]ere, while Dr. Black has been treating the claimant since 2014, the treatment records including repeated examinations even by Dr. Black do not support the extreme limitations." *Id*.

Specifically, the ALJ concluded Dr. Black's finding that plaintiff has "permanent right leg weakness" was "inconsistent with multiple instances of normal strength and no abnormalities on electrodiagnostic studies." Tr. 19 (citing Tr. 365–70, 396–400, 554–60, 790–94, 804–14, 876–77, 880–85, 897–98). The ALJ also found Dr. Black's decision to limit plaintiff to sitting, standing, and walking for a "total of only two hours of an eight-hour workday" was "inappropriate in light of the objective findings." *Id.*

However, again, the ALJ failed to properly evaluate the medical opinions of Dr. Byram and Dr. Rung. It is unclear how Dr. Black's findings could be "inconsistent" with the record when the totality of the medical evidence was not considered.

## III.    Remand

When a court determines the Commissioner erred in some respect in making a decision to deny benefits, the court may affirm, modify, or reverse the Commissioner's decision "with or without remanding the cause for a rehearing." *Treichler v. Comm'r Soc. Sec. Admin.*, 775 F.3d 1090, 1099 (9th Cir. 2014) (quoting 42 U.S.C. § 405(g)). In determining whether to remand for further proceedings or immediate payment of benefits,

the Ninth Circuit employs the "credit-as-true" standard when the following requisites are met: (1) the ALJ has failed to provide legally sufficient reasons for rejecting evidence, (2) the record has been fully developed and further proceedings would serve no useful purpose, and (3) if the improperly discredited evidence were credited as true, the ALJ would be required to find the plaintiff disabled on remand. *Garrison*, 759 F.3d at 1020. Even if all of the requisites are met, however, the court may still remand for further proceedings, "when the record as a whole creates serious doubt as to whether the claimant is, in fact, disabled[.]" *Id*. at 1021.

Here, the first requisite of the *Garrison* test is met. As discussed above, the ALJ failed to evaluate the medical opinions of Dr. Byram and Dr. Rung. As to the second requisite of the *Garrison* test, the Commissioner argues that the court must remand for further proceedings because, plaintiff cannot establish the "rare circumstances necessary for a deviation from the ordinary remand rule." Def. Br. 5, ECF #20. Indeed, although Dr. Byram and Dr. Rung released plaintiff back to part-time work at his previous employer, Tr. 426, it is unclear whether the limitations they assessed would prevent plaintiff from performing any full-time work in the national economy.

Therefore, this case is remanded for the ALJ to evaluate the medical opinions of Dr. Byram and Dr. Rung, and reevaluate Dr. Black's opinion in light of the entire record. Should the ALJ again conclude that Dr. Black's "restrictions are not consistent with his approval of the claimant's commercial driver's license," *see* Tr. 19, the ALJ shall discuss the medical requirements for a commercial driver's license, *see* 49 C.F.R. § 391.41(b), and explain how they relate to a finding of disability. The ALJ may conduct other further proceedings as necessary.

## ORDER

For the reasons discussed above, the Commissioner's decision is REVERSED and REMANDED for further proceedings consistent with this opinion and order.

DATED May 26, 2020.

/s/ Youlee Yim You

Youlee Yim You
United States Magistrate Judge